**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

    **v.**                                     **Case No. 09-CR-209(1)**
                                                  **JUDGE FROST**

**RIGOBERTO GOMEZ-GOMEZ,**

      **Defendant.**

**<u>OPINION AND ORDER</u>**

This matter came on for a hearing this 4th and 5th days of January, 2010 upon Defendant's

Motion to Dismiss (Doc. # 43) filed on December 7, 2009 and upon the Government's Response

(Doc. # 61) filed on December 22, 2009.  Defendant also filed an Expert Psychological Report

(Doc. # 75) on December 31, 2009.

Defendant argues that he is a juvenile and that the charges against him must be dismissed

because the requirements of 18 U.S.C. § 5032 have not been invoked.  The Government

maintains that Defendant is an adult and that this Court has jurisdiction to proceed in this matter.

As a preliminary matter, Defendant also filed a Motion *in limine* (Doc. # 63) on

December 23, 2009.  The motion requests that this Court prohibit the introduction of evidence at

the hearing that has not been provided to Defendant.  The Government filed a Response (Doc. #

73) on December 31, 2009 indicating that any information that it intends to use at the hearing has

been previously provided to Defendant.  The Court did not rule on the Motion *in limine* before

the hearing.  During the hearing the Court closely monitored the testimony and evidence

presented and found that no evidence was introduced that had not already been provided to

1

Defendant. The Court therefore finds the Motion *in limine* to be **MOOT** and the Court **DENIES** the same.

The parties agreed at the hearing that the Juvenile Justice and Delinquency Prevention Act provides the guidelines for determining whether a juvenile is entitled to the protections of the Act. The Government bears the initial burden of proving Defendant's age and must offer *prima facie* evidence of Defendant's adult status. If the Government provides a *prima facie* case that Defendant is an adult, the burden then shifts to Defendant to produce evidence of Defendant's juvenile status. The Government thereafter may rebut Defendant's evidence with additional information. The procedure was approved in *United States v. Salgado-Ocampo*, 50 F.Supp 2d 908, 909 (D. Minn. 1999) wherein the Court stated:

> The initial burden of proving defendant's age falls on the government, which must offer prima facie evidence of defendant's adult status. If the government satisfies this burden, defendant must then come forward with evidence of his juvenile status. If the defendant comes forward with such evidence, the government has an opportunity to rebut with any additional information. *See U.S. v. Alvarez-Porras*, 643 F.2d 54, 66-67 (2nd Cir. 1981), *cert. denied*, 454 U.S. 839, 102 S.Ct. 146, 70 L.Ed.2d 121 (1981) (agreeing with district court's determination that the government has the obligation of proving that a defendant is an adult, but if defendant does not offer verifiable personal data to determine his age the burden should fall on defendant to show his juvenile status). *See also U.S. v. Garcia-Flores*, 925 F.2D 1471 (9th Cir. 1991) (unpublished opinion, text available at 1991 WL 17448); *State v. Sandomingo*, 39 Wash. App. 709, 695 P.2d 592, 594 (1985) ("[W]hen there is a reasonable basis for believing a defendant to be an adult, and the State has no means of verifying his claims, the defendant has the burden of proving his minority.").

At the beginning of the hearing the Court found that the Government had met its initial burden of proving that Defendant was an adult by *prima facie* evidence. The *prima facie* evidence consisted of the follows:

    1.    Defendant's statement at the time of his arrest that he was born on October 1,

1978 which indicates that Defendant was 30 years of age at the time of his arrest on August 24, 2009.

2.	The United States Marshal's prisoner medical release form which lists Defendant's birth date of October 4, 1978 also indicating that Defendant was 30 years old at the time the medical release was completed.

3.	Records from the Bureau of Immigration and Customs Enforcement ("ICE") when Defendant was found to have illegally attempted to enter the United States in 2002 where Defendant provided his birthday of October 1, 1978 which would place Defendant's age at 24 at that time.

4.	Records from ICE when Defendant was again apprehended attempting to illegally enter the United States on April 1, 2006 at which time Defendant advised the authorities that his birth date was October 1, 1979 which would indicate Defendant was 27 at that time.  In that case Defendant was held as a material witness in an alien smuggling case during which Defendant made no claim that he was a juvenile.

5.	A driver's license issued to Defendant in an alias name of Jhony Ventura that listed his date of birth as February 14, 1977.  The driver's license was issued in 2003 which therefore indicates Defendant was 26 years old.

6.	A driver's license issued to Defendant in an alias name of Felix A. Mercado Baez that listed his birth date of April 17, 1985 which would still place Defendant as an adult in 2006.  He would have been 21 years old when he received this driver's license.

7. A dental receipt in the alias name of Felix Mercado listing Defendants birth date as April 17, 1985, indicating that Defendant is an adult.

8. An application for a marriage license in the name of Rigoberto J. Gomez with the date of birth of October 21, 1978, again indicating Defendant is an adult.

9. A second application for a marriage license dated June 23, 2003 in the name of Rigoberto Gomez Gomez indicating a birth date of January 10, 1978, which places Defendant in an adult status at this time.

Having found that the Government had presented a *prima facie* case that Defendant was an adult as a result of the documentary evidence presented, Defendant presented testimony and evidence of his alleged juvenile status.

Defendant first introduced a certified copy of a birth certificate accompanied by the Opostille seal of the state of Oaxaca, Mexico indicating that Defendant was born on October 1, 1992 in San Juan Yetzecovi, Oaxaca, Mexico. The certified birth certificate indicates that Defendant's father was 29 years old and Defendant's mother was 24 years old at the time of Defendant's birth. Defendant argues that it is clear from the document that Defendant is a juvenile.

Defendant then called Victoria Gomez who testified that she is the aunt of Defendant. She further testified that she is a resident of Oaxaca, Mexico and that she was present at the birth of Defendant. She indicated she assisted in the birth and was present when Defendant was born. Ms. Gomez related that Defendant was born on October 1, 1992 or somewhere around that date and that, according to the custom in Mexico, Defendant's parents registered the child's birth five to ten days later.

On cross-examination Ms. Gomez's testimony was confusing and at times difficult to follow. She originally testified that Defendant's older brother, Manuel Gomez, who is a co-defendant in this matter, was born in 1955 but then corrected the testimony and indicated that Manuel Gomez was now 35 years old. The aunt identified the four children born to Defendant's mother and father. She testified that Manuel was the oldest, followed Irma whose birth date is December 31, 1977, then Lucero who was born on April 30, 1989, and finally Defendant who was born on October 1, 1992.

Defendant next called Dr. Jolie Brams, a psychologist who has performed extensive work in child development. The Government had previously objected to this witness testifying but the Court permitted Defendant to call the witness to make the determination during the examination of the witness whether the testimony was admissible. Dr. Brams had completed an evaluation of Defendant and was called to testify about emotional development of Defendant. She admitted that she could not testify concerning the chronological age of Defendant but only as to whether Defendant functioned as an adult or an adolescent. The Court found the testimony to be irrelevant and no further testimony was elicited from this witness, at that time.

Defendant rested his case and the Government called Braulio Martinez as its first witness. Braulio Martinez grew up in Defendant's hometown in Mexico. He testified that he saw Defendant two or three times in the small town. Mr. Martinez related that he saw Defendant once while walking on the street in their hometown and at least one other time when Mr. Martinez's mother took him to Defendant's home to see Defendant's mother. Mr. Martinez indicated that he was born on March 16, 1986 and although he did know Defendant's age, he believed Defendant to be older than Mr. Martinez. Mr. Martinez testified that Defendant was a

5

little bigger when they were children and he estimated Defendant to be 25 or 26 years old now because Mr. Martinez is 24 years old now. The witness admitted that he is illegally here in the United States and is using a fictitious social security number to maintain employment.

Certified copies of several documents were thereafter admitted into evidence. The Court admitted into evidence a certified copy of an Ohio driver's license issued to Defendant in an alias name of Jhony Ventura listing Defendants birth date as February 14, 1977. Also admitted was another certified copy of an Ohio driver's license issued to Defendant in the alias name of Felix A. Mercado Baez which revealed a date of birth of April 17, 1985. Defendant's February 3, 2003 application for a marriage license was admitted that listed his date of birth as October 21, 1978. Defendants second application for a marriage license dated May 23, 2003 was also admitted and it listed Defendant's birth date as January 10, 1978. Manuel Gomez, Defendant's brother, also applied for a marriage license on May 23, 2003 and that application lists Manuel Gomez's birth date as July 30, 1975.

Detective Steve Price testified next on behalf of the Government. He was present on August 24, 2009 when a search warrant was executed on Manuel Gomez's residence. An envelope was found during the search addressed to Irma Gomez-Gomez, the sister fo Defendant, with a return name of Antonia Gomez Chavez, Defendant's mother, but with a return address different from Defendant's hometown. Found inside the envelope were three birth certificates. One birth certificate was issued in Defendant's name and listed his date of birth as October 1, 1978. A second birth certificate was issued in Defendant's mother's name and listed her date of birth as June 15, 1955. A birth certificate in the name of Defendant's father was also found in the envelope and identified his birth date as June 24, 1950. The inventory officer, Ray Constable

of Columbus Police Department also confirmed that the birth certificates were found during the search of Manuel Gomez's residence.

Steven Kemerling, an ICE deportation officer testified on behalf of the Government concerning several records. Agent Kemerling identified the document completed at the time of Defendant's arrest on the instant offenses on August 24, 2009 when Defendant advised the officers that his date of birth was October 1, 1978. He also identified the records from Defendant's border stop on March 23, 2002 wherein Defendant's birth date is also listed as October 1, 1978. Defendant was stopped a second time at the border for an immigration violation on April 1, 2006 and Defendant provided a birth date of October 1, 1979. The October 1, 1979 birth date was confirmed by Defendant in a sworn statement he gave to ICE agents regarding a related illegal smuggling investigation that arose out of the April 1, 2006 arrest. Agent Kemerling identified Manuel Gomez's birth certificate from his ICE file that listed the brother's birth date as July 30, 1975. And, the witness identified the birth certificate of Defendant's mother from her ICE file. The birth certificate lists the mother's birth date as June 13, 1955. Finally, Agent Kemerling produced an affidavit from the co-defendant, Manual Gomez, that discussed his marriage. The significance of the affidavit is that he and his brother, Rigoberto Gomez Gomez got married on the same date, May 23, 2003.

Nathaniel Simon, another ICE agent, testified that he was called to the scene of the execution of the search warrant on August 24, 2009 and he took two people into custody at that time. One of the suspects was Defendant. Defendant was fingerprinted and he advised Agent Simon that his birth date was October 1, 1978.

Mark Bryant, a latent fingerprint examiner with the Columbus Police Department,

7

testified that he compared the August 24, 2009 fingerprints with the fingerprints taken from Defendant during the March 23, 2002 border apprehension and the two sets of fingerprints matched each other.

The Government rested and Defendant called Manuel G. Gomez, Defendant's brother and a co-defendant. He disputed the testimony of Braulio Martinez. Manuel Gomez indicated that Mr. Martinez did not meet Defendant until Mr. Martinez was introduced to Defendant here in the United States. On cross examination, Manuel Gomez was questioned about his marriage date and the fact that Defendant and Manuel Gomez got married on the same date in Franklin County, Ohio. He testified that his brother was only 10 years old when they got married. Manuel Gomez had no explanation for the difference in ages listed on the birth certificate of Defendant found at Manuel Gomez's home and the certified birth certificate presented by Defendant.

Dr. Jolie Brams was called by Defendant as the last witness. She testified that it was highly unlikely that Braulio Martinez could recall meeting Defendant in Mexico that long ago unless some salient or meaningful event accompanied the meeting. Because there was no testimony that the meeting occurred in some unique manner, Dr. Brams found it highly unlikely that Mr. Martinez could have remembered the encounters. She believes that the recollected meetings were the result of suggestions presented to him when he was questioned by the authorities.

Defendant submits that *Salgado-Ocampo* should guide this Court in deciding the ultimate issue in this case. While this Court agrees that the case provides this Court with guidance concerning the burden of going forward with the evidence and the burden of proof, the

Court disagrees that the facts in that case and the facts of the case *sub judice* are indistinguishable. Indeed, factual determinations such as age are based upon the peculiarities of each case including the reliability of the documents introduced, the credibility of the witnesses, and the plausibility of the testimony when judged in the overall context of the issues to be decided.

The legal standard is set forth in *Salgado-Ocampo*, *id* at 909:

> After receiving such evidence, the court must determine from the preponderance of the evidence the date on which defendant was born. *Garcia-Flores*, 1991 WL 17448 at *3 (upholding trial court's decision concerning defendant's age under preponderance of evidence standard).

Defendant relies on the certified birth certificate from Mexico and his aunt's testimony to support the position that Defendant is a juvenile. Under normal circumstances this evidence would be compelling. But, a closer look at the evidence reveals many problems and brings into question the evidence upon which Defendant relies.

Defendant made several statements to law enforcement authorities and public officials that would indicate that Defendant is an adult.

In 2002 Defendant reported to ICE agents that his birthday was October 1, 1978. This statement was made when Defendant was found to have illegally entered the United States. Using that birth date, Defendant was 24 years old at the time of his arrest for illegal entry. If Defendant's certified birth certificate and aunt are to be believed, Defendant was 10 years old when he illegally entered the United States. It is inconceivable to this Court that the border agents would not recognize in 2002 that Defendant was a minor. But, even if the authorities did not recognize that Defendant appeared to be young-looking, this Court cannot understand why Defendant would have lied to law enforcement about his age when it would have undoubtedly

assisted Defendant if he had advised the border patrol that he was a juvenile.

On February 3, 2003, Defendant applied for a marriage license in the Franklin County Probate Court. Defendant advised the probate court authorities that he was 24 years of age and his birth date was October 1978. If Defendant's certified birth certificate and aunt are to be believed, Defendant was 10 years old when he applied for a marriage license. It is highly improbably that anyone could apply for and receive a marriage license when that person is 10 years old.

Defendant applied for and was issued an Ohio driver's license on February 13, 2003. The driver's license was issued in an alias name of Jhony Ventura and Defendant provided a date of birth of February 14, 1977. If the February 14, 1977 date of birth is correct Defendant would have been 25 years old when the license was issued. If the certified birth certificate from Mexico and Defendant's aunt are correct Defendant would only have been 10 years old. Again, it is difficult to believe that a driver's license would be issued to a 10 year old.

On June 23, 2003 Defendant again applied for a marriage license in the Franklin County Probate Court and listed his age as 24 years old and his birth date as October 1, 1978. He would have still been 10 years old according to Defendant's certified birth certificate and Defendant's aunt. The positions of Defendant, his aunt, and Defendant's brother are incredible.

On April 1, 2006 Defendant was again apprehended for illegal entry into the United States. Defendant advised the authorities at that time that he was 27 years old and his birth date was October 1, 1979. If Defendant's certified birth certificate and Defendant's aunt are to be believed, Defendant would have been 13 years old at that time. Again, what did Defendant have to gain by deceiving the authorities at that time into believing that he was an adult if he were

10

really a juvenile? It is difficult to accept that Defendant lied to the authorities about being an adult when advising them that he was a juvenile, if he had been a juvenile, would perhaps helped him at that time.

Another Ohio driver's license was issued to Defendant on October 25, 2006 in an alias name of Felix A. Mercado Baez. The license indicates a birth date of April 17, 1985. If the April 17, 1985 birth date is correct Defendant would have been 21 years old when the license was issued. If the certified birth certificate and Defendant's aunt are correct Defendant would have been 14 years old.

Defendant was arrested on the charges he now faces on August 24, 2009. At that time he advised the authorities that his birth date was October 1, 1978 which places his age at 30 years old. If the certified birth certificate from Mexico and Defendant's aunt are correct Defendant was, at the time of his arrest, 17 years old.

The most damaging evidence, however, is the age of Defendant's mother as it relates to the age of Defendant and Defendant's brother's age. On the certified birth certificate Defendant's mother, Maria Antonia Gomez Chavez, is listed at the time of Defendant's birth as being 24 years old. Defendant's brother, is 35 years old. There is no dispute that Defendant's mother is also the mother of Defendant's brother. If Defendant's mother was 24 years old when she gave birth to Defendant and if Defendant's brother is 35 years old, that would mean that Defendant's mother was 6 years old when she gave birth to Defendant's brother. This is too much for the Court to believe.

Defendant argues that it is common for persons from Mexico to lie about their age and present themselves as older because of economic reasons. Defendant submits that it would

11

otherwise be difficult for the individual to obtain employment if a potential employer knew that the person was a juvenile. Although this may be true and putting aside the fact that the lie still affects the individual's credibility, most of the birth dates Defendant gave indicating that he is an adult were given to law enforcement personnel and not to potential employers.

As previously noted, during the execution of a search warrant at Manuel Gomez's residence, a manilla envelope containing three birth certificates were found. One birth certificate relates to Defendant's father, Juan Gomez Cruz, and indicates a date of birth of June 24, 1950. Another birth certificate relates to Defendant's mother, Antonia Gomez Chavez, and indicates her birth date as June 13, 1955. The third birth certificate purports to be that of Defendant and lists Defendant's birth date as October 1, 1978. These birth certificates make sense. All of the dates fit the time frames in this case and do not provide discrepancies that this Court finds with the certified birth certificate and with the aunt's testimony. The birth certificate of Defendant listing his birth date as October 1, 1978 also coincides with many of the birth dates given by Defendant himself to various law enforcement agencies at different times over a period of years.

Preponderance of the evidence is the greater weight of the evidence. Evidence that this Court believes because it outweighs or overbalances the evidence opposed to it. The quality of the evidence presented by the Government far outweighs the evidence presented by Defendant. The quality of the evidence presented in this case favors the Government. The Court finds the certified birth certificate introduced by Defendant to be unreliable. The Court finds Defendant's aunt's testimony to be fraught with inconsistencies and confusion, too numerous to be credible. The Court finds Defendant was 30 years old at the time of his arrest on August 24, 2009 and that Defendant was an adult during the time periods alleged in the indictment. The Court finds

Defendant's birth date to be October 1, 1978.

The Motion to Dismiss is **DENIED.**

**IT IS SO ORDERED.**



         /s/    Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE